Good morning, Your Honors. John Lemon for Appellant, Derris Hurth. Your Honors, Mr. Hurth should get a new trial because the District Court failed to give a required adverse inference jury instruction based on the government's failure to preserve potentially exculpatory evidence. Furthermore, the District Court failed to undertake the required analysis despite the en banc court's holding in United States v. Loud Hawk. And the government used the absence of the required instruction to great effect in closing argument, arguing that the defendants were merely trying to distract the jurors from the real issues in the case and also by vouching for the credibility of its agents. And to briefly recap, this is another one of those reverse sting cases where the ATF had created the crime from start to finish. Mr. Hurth was recruited at the absolute last minute in the words, I believe, of the District Court. He showed up at the absolute last possible moment. And what the government failed to do, what the agents failed to do, was to take any video or any photographs of the crime scene or the takedown scene, either in the moments leading up to the takedown or immediately after. And they did this despite the fact that the undercover agent was wearing a video camera that obviously was supposed to record video, but it malfunctioned, not for the first time, and recorded only audio. There were also two cameras that were on the roof of the warehouse at the takedown site. Both of those cameras, neither one of them worked, apparently because they were running off of a generator that someone had forgotten to start. And finally, no agent that was present bothered to take a single digital photograph or a video using a digital camera or even a cell phone. So there was absolutely no video record of what transpired immediately before the takedown. And the defendants all requested that the trial court give an adverse inference jury instruction. Basically, well, specifically, the instruction said that if a party offers weaker or less satisfactory evidence but stronger and more satisfactory evidence could have been produced at trial, you may but are not required to consider this fact in your deliberations. It's a pretty soft charge. Now, could have been produced at trial, how are we supposed to construe that instruction? Could have been obtained in the sense of you could have made sure the generator worked or evidence that you had but somehow destroyed inadvertently or maybe deliberately. I'm not suggesting in this case that I'm making any decision at all as to whether there was any evidence destroyed deliberately. So what do we mean could have been obtained? Well, I mean, I think just if they had done their jobs properly, there would have been a video record of what happened and there wasn't. And so there was potentially exculpatory evidence for the defendants that was not preserved and that was purely the fault of the government. And how do we know that there was any exculpatory evidence? First of all, there was an audio recording, but aside from that, I mean, the defendants knew what happened here. How do we know that? Was there any showing that there was anything that would have been exculpatory as opposed to inculpatory if the whole thing had been filmed? Well, there's a couple of actually three different responses to that. The first is that with respect to my client in particular, his argument at trial was that he never got out of his vehicle and that that fact supported his argument that he never actually joined the conspiracy. When you say his argument at trial, did he testify to that? No, but that was the defense his attorneys presented. And you had evidence at trial not from him but from others that he never got out of the vehicle? Well, the agent, the case agent actually equivocated, went back and forth on that. And so we'll never know, but the agent testified both ways. So that's a record that we would have had the government, had the agents preserved video. And do we know that had the video been working that it would have shown the vehicle or it would have shown him inside it? Right, the cameras were on top of the warehouse looking down on the takedown scene, which is where this transpired. I know that, but do we know that the scope was wide enough that they would have seen where he was in the vehicle? I don't know that there was specific testimony on that point. I think it was assumed by Dr. Arnold. So it could have shown that he got out of the vehicle. Certainly, and that brings me to my second point, which is that anytime we're talking about potentially exculpatory evidence, we're necessarily having to speculate as to what might be there. But certainly I've had cases before where the government alleges a conspiracy took place, the event is recorded on video, and there's people that are pointing fingers and arguing and gesturing, and it's obvious that it's the opposite of an agreement. It's a disagreement. And so it's possible that something like that could have happened, but we will never know that because, again, the government didn't make the recording. Well, we don't know it because the defendant didn't put any evidence in. I mean, he didn't take the stand and say anything. Or make, I don't see necessarily even how to take the stand, but make a record by submitting an affidavit that, you know, this, I didn't get out of the car. And if they had taken a picture, it would have proved what I'm saying. I mean, there isn't even that. It's all, it strikes me, it's all, you know, there wasn't a film. So you could say what, you know, a lawyer could argue whatever he wants to. Well, his lawyers actually made the argument that he never got out of the car. They cross-examined on that point, and that was very much the centerpiece of the case. But the issue, again, this is the government's verse sting. It's their burden of proof. They had the video cameras. As the trial court pointed out, they chose to use a camera that had a track record for malfunctioning. They chose to use generators. Well, suppose they had decided they weren't going to film anything. Was the government under an obligation to film at all? If they made a conscious decision not to film it here, they made a decision to film it and just didn't do it properly, but if they made a conscious decision not to do it. Well, that's even more, you know, that goes to more incompetence than the level of instruction. Well, I think the instruction would still be appropriate under those circumstances because, again, we have a premeditated takedown. This whole thing is set up well in advance, and then the government would make a conscious decision not to videotape the event in the year 2010 or 2009. Was the jury aware that the cameras on the top of the building had not functioned and that the video camera carried by the agent was not functioning properly? Yes, the defense was allowed to argue that, but the government in response argued that the defendants were basically creating a red herring for the jury, trying to distract them from the real issues in the case, and then also, frankly, vouched for the credibility of its agents, saying that, you know, these agents don't lie. They didn't want the cameras to malfunction. These agents tell the truth. This is not what they wanted, but it's just what happened. So an instruction would certainly have blunted that type of argument that was clearly effective. Let's see how it would have blunted it. I mean, this is not ñ I mean, there are oftentimes issues that you need a judge to give an instruction on because it's not something that the jury would readily conclude using its own common sense. And then there are issues like this, where once the defendant is free to make the argument, why didn't they film it, the whole argument? It seems to me that the juror's own common sense tells them what the charge that you want would have told them. I mean, they don't need a ñ you don't need a ñ you don't need essentially a charge to a jury to tell them what their own common sense suggests, as long as you're permitted to argue it. I mean, that's my own view of it. Well, Your Honor, respectfully, I think that instruction certainly is appropriate under the Ninth Circuit's precedent and certainly on the facts of this case, where, again, we have a fictitious crime,  the government engineered this from start to finish, and yet they couldn't have any ñ a video camera that worked in the year 2009 that warrants some type of sanction. And certainly what happened with the trial court here is that basically the court agreed with that. The court was very, very ñ the court expressed that it wasn't happy with what the ñ the agent's failure to preserve the video. But the court did not undertake the required analysis under United States v. Loud Hawk to balance the government's malfeasance or negligence against the potential prejudice. Instead, the court relied on a concurrence by Judge Reimer in a case where an adverse inference instruction was used against a criminal defendant to say that generally speaking adverse inference instructions aren't a good idea, so I'm not going to give one. But that's actually not what is required under Loud Hawk, which specifically says that even if there's no due process violation, the court is obligated to balance the wrongdoing or negligence on the part of one party against the prejudice to the other. And that analysis did not take place here. So that's, I think, the key point that, again, I don't mean to repeat myself, but the district court simply didn't undertake the required analysis. And if he had, based upon the way that his comments about the government's negligence here played out, I think it's likely that he would have given the instruction. But the adverse inference really says you may draw the inference rather than the motion. Right. So the requested instruction was actually a pretty soft sanction. But that may cut against your position, meaning I don't think the jury needed permission to draw an adverse inference, and indeed they were invited to do so by the argument of defense counsel. Right. And again, the problem with that is that the government's response to that was not blunted by an actual instruction. The government got away with saying this is the defense is trying to lead you off the path and distract you from the real issues in this case. Well, it was a real issue in the case. It was the government's burden of proof, and it spoke to the integrity of their investigation. I would like to point out that they could have made the same argument even with the instruction. Right. But the instruction, again, I think would have blunted the government's response. But I did want to point out that there's a related case, or I don't know that it's a related case, a related issue, that was heard on December 4th in this court. And I listened to the oral argument, and the panel made it very clear that they believed that the trial court had not followed the requirement of loud talk. And I don't know if that's going to be a published opinion or not, but I just wanted to make this court aware that it was pretty much the identical issue, and the panel made it very clear that they were going to reverse based on the failure to give the instruction. And that was the case is United States v. Sevilla, S-I-V-I-L-L-A, and it's 11-50484. And with that, if I could reserve the remainder of my time for rebuttal. Okay. Thank you. May it please the Court. Lena Martin-Owens on behalf of the United States. I was also trial counsel in this case. It makes sense to begin, unless the Court has questions, with responding to defendant's argument on the adverse inference instruction. Taking this first as an abuse of discretion, as an abuse of discretion argument, which it must be, did the Court abuse its discretion in failing to provide the instruction that the defendants asked for, the Court, and this is at ER-41, made a specific finding that there was no bad faith on the part of the government and that there was no exculpatory nature to this evidence. The defendant has pointed to one fact. And that's why I'm here. Well, it's hard to make a factual finding for sure that it was not exculpatory without having seen it. That is true, Your Honor. However, defendant points specifically to the fact of whether or not he got out of his vehicle. He points to that as the cornerstone of his argument. Did he or did he not get out of his vehicle? And if you look at the actual record in this case, it demonstrates that when he says he was getting out of his vehicle would have been after all substantive conversations took place. If you look at government's excerpts of record at 1089, you will see that the conversation between Defendant Hurth and the undercover took place as the agent, the undercover agent testified when Defendant Hurth was still in the car. By the time that Defendant Hurth is claiming he got out of his vehicle was when the agent was actually going back to the agent's own vehicle in order to call for the takedown to take place. So I think it's important that if the court focuses on whether or not it would have been exculpatory, whether or not he got out of his vehicle after the agent was leaving to call for the takedown wouldn't have been exculpatory at all, even assuming it was true that he did get out and Agent Whitmore testified first that he believed he didn't get out of his vehicle, that he stayed in the car. And it wasn't until he was faced with a report drafted by another agent that Agent Whitmore said, well, maybe he did and I didn't see him get out of his vehicle. The truth in the evidence in this case demonstrated that the video would have actually confirmed what the agent was testifying to and there was no evidence to the contrary that anything exculpatory would have come out of this. So there just wouldn't have been any prejudice by failing to give this instruction. Each defendant, including Defendant Hurth, focused almost their entire defense on the fact that the government failed to create, and to be clear, let's focus, this was to create this type of evidence. In United States v. Citro, there wasn't even a wire of any kind being used because the agent was patted down every time he met with the target of that investigation. So here, Defendant Hurth is saying that the government had a requirement to create this type of evidence and then Next had a requirement that it would have somehow exonerated the defendant, which just isn't true. And so if you look at did the Court abuse its discretion in failing to give this instruction when, as the Court has pointed out, the jury clearly was able to consider the argument of whether or not this videotape would have made any difference at all. Quite frankly, the defense would have had really no argument but for the fact that the government had failed to create this evidence. So unless the Court has other questions, I was going to point out the waiver issue, which I do think is an important one in this case as well. The defendant has actually, in the government's position, waived his outrageous government misconduct claim. The defendant did not preserve that issue. The district court was deprived wholly of the opportunity to consider the outrageous government misconduct claim that the defendant now brings before this Court. And because of that, the record is devoid of facts that would be helpful to make a determination of whether or not there was any type of government misconduct, which, as the government has briefed, there wasn't government misconduct. But the defendant has simply waived that issue, and I don't think he can bring that before this Court, because by the time the Court was even going to consider the matter at all, the defendant, Defendant Evans, that had actually brought any type of an outrageous government misconduct based on the nature of the case, it had been resolved. He had pled guilty. And so the Court was deprived of that opportunity, and I think, therefore, under Masalli and Restrepo Rila, doesn't properly put the case before this Court. Unless the Court has questions, I'll submit. Okay. Thank you. Your Honor, with respect to the bad faith issue, I want to be clear on this point. The district court did find that there was no due process violation, but this is the there's an inter-circuit conflict here between the remedy for failure to preserve evidence or destruction of evidence where there is no due process violation. The sixth judge majority, which was actually styled as a concurrence in Loud Hawk, that sixth judge opinion written by then Judge Kennedy says that even in the absence of a due process violation, the trial court is required to balance the nature of the conduct versus the potential prejudice. And that's what did not happen here. There are other cases within the circuit that hold that absent a due process violation, you don't get the instruction. Those cases are based on a misreading of Loud Hawk and one judge's opinion in Loud Hawk. So I think this is coming to a head at some point, probably with en banc review. But our position is that the Court was obligated to undertake a balancing test with respect to whether the lesser sanction of an instruction was warranted. And again, not to beat it to death, but the government was very effective in their closing argument, arguing that the defendants were trying to distract the jury. The instruction would have allowed the defense to say, this is not a red herring. This is not irrelevant. This is important because it speaks to the integrity of their investigation and to their burden of proof. Thank you. Thank you. Thank you very much. United States v. Hearth, now submitted for decision.
judges: Korman, Goodwin, Fletcher